**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 6 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENST CIRCUIT

REX BAKER, JOSEPH N. BORDELON, GARY COON, MACK D. MANTLE, JAMES D. SPEARS, JR., GARY MILLER, SR., EDWARD McHENRY,

    Plaintiffs-Appellees,

    and

ALAN BOYD, CHARLIE E. BRADSHAW, JR., ROBERT CORNETT, JR., LARRY CUNNINGHAM, DENNY HENSLEY, STEVEN D. HENSLEY, LEONARD L. MAHAN, TRACY R. McMANUS, EDDIE MILLER, GERALD MILLER, DAVID L. ROBINSON, DENNIS STILES, RAY E. FOWLER, WILLIAM R. CLARENCE,

    Plaintiffs,

    v.

FLINT ENGINEERING & CONSTRUCTION COMPANY,

    Defendant-Appellant,

    and

BARNARD CONSTRUCTION CO., INC.; DAVY McKEE CORPORATION; FOUR-WAY COMPANY, INC.; FOUTZ & BURSUM

No. 96-2133

CONSTRUCTION COMPANY, INC.;
MOUNTAIN WEST FABRICATION PLANTS
& STATIONS, INC.; PIONEER
CONTRACTING COMPANY, INC.,

Defendants.

---

Appeal from United States District Court
for the District of New Mexico
(D.C. No. CIV-93-140-BB)

---

John T. Schmidt (Deirdre O. Dexter and Rebecca S. Woodward with him on the brief), of Conner & Winters, Tulsa, Oklahoma, for the appellant.

Michael L. Oja (J.E. Gallegos and Michael J. Condon with him on the brief), of Gallegos Law Firm, P.C., Santa Fe, New Mexico, for the appellees.

---

Before BRISCOE, McKAY, and LUCERO, Circuit Judges.

---

BRISCOE, Circuit Judge.

Plaintiffs are a group of rig welders in the natural gas pipeline construction industry. They filed this action against Flint Engineering & Construction Company for overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* Flint appeals the district court's entry of summary judgment in favor of plaintiffs, contending the court erred in concluding plaintiffs were employees of Flint rather than independent contractors. We exercise

-2-

jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.

Flint is a corporation engaged in the construction, installation, and servicing of oil and gas pipelines and related facilities for the oil and gas industry in the "Four Corners" region of New Mexico. In particular, Flint is routinely hired as a general contractor by oil and gas companies to build natural gas pipelines and compressor stations which transport natural gas from the wellheads to the owner's main processing plants.

When Flint is the successful bidder on a project (or is otherwise hired to complete a project), it hires a variety of workers, including rig welders, to assist in completion of the project. Rig welders (a/k/a pipe welders) perform skilled welding on pipes, sheet metal, and other portions of gas industry facilities. They are routinely tested and certified by project owners to insure they can perform their jobs. They provide their own welding equipment, which is typically mounted on flat-bed pickup trucks. The equipped trucks are referred to as "welding rigs," and each welding rig costs between $35,000 and $40,000. Rig welders are also responsible for costs of stocking their welding rigs with supplies, as well as for necessary repairs to the rigs. Rig welders do not bid on jobs and do not have contractor's licenses that would enable them to do so. Flint simply hires rig welders at a set hourly rate to work on particular projects. Flint does not

-3-

negotiate the hourly rate, and sometimes pays on a "straight contract" basis at approximately $27 to $30 per hour, and sometimes on a "split check" basis at a rate of $10 per hour for labor and $17 per hour for rig rental.

Work on a project is typically conducted six days a week, twelve to fourteen hours per day. Rig welders are supervised by Flint foremen and are required to arrive, take breaks, and leave at times specified by the foremen. They are not allowed to complete their work when they want and, in most cases, it would be impossible for them to do so because they must coordinate their work with the other crafts and because other equipment and workers are necessary to move pipe for welding. Rig welders are not provided project blueprints. Instead, the foremen map out what pipes they want built and in what order. The foremen do not establish the welding specifications and standards, nor do they tell rig welders how to weld or how long a particular weld should take. Welding specifications and standards are established by the customer (i.e., the project owner) and the quality of welding is overseen by an inspector hired by the customer. Because of the nature of their work, rig welders (and other pipeline workers) would be unemployed after completion of a project if they did not seek work on new projects. Accordingly, it is common for rig welders to work for several different companies during the course of a year.

Prior to July 1, 1991, Flint considered rig welders as independent

contractors and asked each rig welder to sign a document entitled "Agreement With Independent Contractor," which stated:

> It is the intent of the parties involved to establish and maintain an "independent relationship" rather than an employer-employee relationship. All Federal, State and Local laws, regulations, and guidelines should be adhered to accordingly. The Independent Contractor is responsible for maintaining adequate amounts of insurance."

R. I at 49. The agreements did not indicate how long the "independent relationship" was to last, did not refer to specific projects or project specifications, and did not indicate how much the welder was to be paid. Although Flint began characterizing rig welders as employees on and after July 1, 1991, no other substantial changes took place in the way they were hired or treated.

Flint treats the majority of workers on each project as employees. For example, job foremen are treated and paid as employees, as are laborers, pipefitters, and welders' helpers (all of whom, like rig welders, are hired on a per project basis). Flint treats a few other workers (e.g., insulation workers, electrical workers) on each project as subcontractors or independent contractors. These subcontractors are paid on a lump-sum basis or a unit basis.

Plaintiffs filed this action on February 5, 1993, claiming violations of the FLSA. The parties filed cross-motions for summary judgment, all of which focused on whether plaintiffs were employees of Flint prior to July 1, 1991, for

purposes of the FLSA.  The district court conducted an evidentiary hearing and, on May 26, 1994, granted summary judgment in favor of plaintiffs on the independent contractor/employee issue, concluding plaintiffs were employees prior to July 1, 1991.  Thereafter, the parties reached a settlement of other issues unrelated to the independent contractor/employee issue.  On June 3, 1996, the court entered final judgment in favor of plaintiffs on the independent contractor/employee issue, consistent with its May 24, 1994, order, and concluded the settlement between the parties resolved all remaining issues asserted by plaintiffs against Flint.  The court further found that, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, there was no just reason for delay of entry of final judgment on the order granting summary judgment in favor of plaintiffs.

## II.

The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1).  In turn, "employer" is defined as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.'" Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 326 (1992) (quoting 29 U.S.C. § 203(g)).  The Supreme Court has emphasized that the "striking breadth" of this latter definition "stretches the meaning of 'employee' to cover some parties who might not qualify

as such under a strict application of traditional agency law principles." Id. Thus, in determining whether an individual is covered by the FLSA, "our inquiry is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'" Henderson v. Inter-Chem Coal Co., Inc., 41 F.3d 567, 570 (10th Cir. 1994) (citing Dole v. Snell, 875 F.2d 802, 804 (10th Cir. 1989)). Instead, the economic realities of the relationship govern, and "the focal point is 'whether the individual is economically dependent on the business to which he renders service . . . or is, as a matter of economic fact, in business for himself.'" Id. The economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records. Watson v. Graves, 909 F.2d 1549, 1553 (5th Cir. 1990).

In applying the economic reality test, courts generally look at (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business. Henderson, 41 F.3d at 570. In deciding whether an individual is an employee or an independent contractor under the FLSA, a district

court acting as the trier of fact must first make findings of historical facts surrounding the individual's work. Second, drawing inferences from the findings of historical facts, the court must make factual findings with respect to the six factors set out above. Finally, employing the findings with respect to the six factors, the court must decide, as a matter of law, whether the individual is an "employee" under the FLSA. Id. at 571. None of the factors alone is dispositive; instead, the court must employ a totality-of-the-circumstances approach. Id. at 570

In reviewing the district court's decision on appeal, we review the two types of factual findings (findings of historical fact, and findings with respect to the six factors) for clear error. The ultimate determination of whether an individual is an employee or an independent contractor for purposes of the FLSA is a question of law, which we review de novo. Id. at 571.

*Control*

The district court found Flint's "degree of control over the rig welders, and the Plaintiffs' lack of independence over setting their work hours, work crews and other details of their welding work, is more consistent with employee rather than independent contractor status." R. I. 272. After carefully reviewing the record on appeal, we conclude this finding is not clearly erroneous.

-8-

As in Dole, "the record does not support any inference that these [rig welders] act[] autonomously, or with any degree of independence which would set them apart from what one would consider normal employee status." 875 F.2d at 806. Instead, Flint's foremen tell the rig welders when to report to work, when to take breaks, on what portion of the project they will be working, and when their workday ends. The record indicates rig welders cannot perform their work on their own schedule; rather, pipeline work has assembly line qualities in that it requires orderly and sequential coordination of various crafts and workers to construct a pipeline. The record further indicates plaintiffs work on only one project at a time and do not offer services to third parties while a project is ongoing. Indeed, the hours plaintiffs are required to work on a project (ten to fourteen hours a day, six days a week), coupled with driving time between home and often remote work sites each day, make it practically impossible for them to offer services to other employers. In short, very little about plaintiffs' work situation makes it possible to view plaintiffs as persons conducting their own businesses. See id. at 808.

*Opportunity for profit or loss*

In analyzing the second factor, the district court found plaintiffs are paid at a fixed hourly rate, plaintiffs have no opportunity to experience a loss on the job

site, plaintiffs' ability to control costs of welding supplies does not necessarily enable them to make a profit, and plaintiffs' ability to maximize their wages by "hustling" new work is not synonymous with making a profit. Based on these findings, the court found "Plaintiffs had no opportunity to experience a profit or loss consistent with the characteristics of being independent businessmen." R. I. at 273. These findings are not clearly erroneous.

If plaintiffs could bid on jobs at a set amount and correspondingly set their own hours or schedule, they would have the opportunity for profit or loss. However, plaintiffs are hired on a per-hour basis rather than on a flat-rate-per-job basis. There is no incentive for plaintiffs to work faster or more efficiently in order to increase their opportunity for profit. Moreover, there is absolutely no risk of loss on plaintiffs' part. Plaintiffs exercise independent initiative only in locating new work assignments. While working on a particular assignment, there is little or no room for initiative (certainly none related to profit or loss). There is no indication plaintiffs share in the profits (or losses) of Flint's business. See Dole, 875 F.2d at 809. "In short, the [rig welders] ha[ve] no control over the essential determinants of profits in a business, and no direct share in the success of the business." Id. at 810.

*Investment in business*

The district court found plaintiffs have substantial investments in their welding rigs and that twenty-five to fifty percent of their compensation is based on their furnishing rigs. Although the court further found Flint's investment in the overall business far exceeds plaintiffs' investments, it nevertheless found "Plaintiffs' investment in this industry, and their compensation which is based on this investment, is more consistent with finding the rig welders independent contractors." R. I. at 277.

The investment "which must be considered as a factor is the amount of large capital expenditures, such as risk capital and capital investments, not negligible items, or labor itself." Dole, 875 F.2d at 810. This factor "is interrelated to the profit and loss consideration." Lauritzen, 835 F.2d at 1537. "Courts have generally held that the fact that a worker supplies his or her own tools or equipment does not preclude a finding of employee status." Dole, 875 F.2d at 810. In making a finding on this factor, it is appropriate to compare the worker's individual investment to the employer's investment in the overall operation. See id. (comparing defendants' relative investment as cake decorators with employer's overall investment in bakery business); Lauritzen, 835 F.2d at 1537 (comparing migrant workers' capital investment with employer's overall investment in pickle-farming operation).

The district court is clearly correct in finding plaintiffs' investments in

-11-

their welding rigs are significant (at least when compared to other workers), and in finding a significant portion of plaintiffs' pay is based on their furnishing rigs. However, plaintiffs' investments are disproportionately small when compared to Flint's investment in the overall business. Several witnesses testified that Flint routinely had hundreds of thousands of dollars of equipment at each work site. Compared to Flint's investment in the overall business, plaintiffs' investments are not so significant as to indicate they are independent contractors.

*Permanency of working relationship*

The district court found plaintiffs rarely work for Flint more than two months at any one time, and rarely for more than three months during any twelve-month period. However, the court found plaintiffs remain on the job site until the necessary welding is done. Thus, the court found "Plaintiffs' lack of permanence is due to natural characteristics in the industry, and not the independent choice usually exhibited by one who intentionally chooses to be in business for oneself. Therefore, while rig welders are temporary workers, this finding is of little relevance in determining whether these Plaintiffs are employees or independent contractors." R. I. at 279.

Generally speaking, "'independent contractors' often have fixed employment periods and transfer from place to place as particular work is offered

to them, whereas 'employees' usually work for only one employer and such relationship is continuous and of indefinite duration." Dole, 875 F.2d at 811. However, "[m]any seasonal businesses necessarily hire only seasonal employees, [and] that fact alone does not convert seasonal employees into seasonal independent contractors." Lauritzen, 835 F.2d at 1537.

We agree with the district court's findings on this factor. Although plaintiffs exhibit characteristics generally typical of independent contractors as regards the short duration of their employment relationships and their frequent relocation to find employment, these characteristics of plaintiffs' employment are clearly due to the intrinsic nature of oil and gas pipeline construction work rather than any choice or decision on the part of plaintiffs. Notably, the record indicates the majority of workers employed by Flint (e.g., pipefitters, laborers, etc.) work on the same basis as plaintiffs and are nevertheless treated as employees. We conclude it is appropriate to characterize plaintiffs' relationship with Flint as "permanent and exclusive for the duration of" the particular job for which they are hired. Id. at 1537 (migrant workers' relationship with single farming operation was permanent and exclusive for duration of single harvest season).

*Degree of skill required to perform work*

The district court found plaintiffs "are highly skilled individuals" and are,

-13-

in fact, "the most skilled employees on a transmission systems project." R. I. at 280. However, the court further found plaintiffs do not "make any independent judgments on the job site," and thus do not exercise their skills "in any independent manner." Id. The court further found Flint does not attempt to hire the most skilled available rig welders nor does it negotiate pay depending on the level of skill possessed.

> Most independent contractors develop a business relationship with many contractors based on their expertise. If they do superior work they are often sought out in the future. Part of the reason is that the contractor comes to trust their skills and depends upon their judgment in completing their tasks. Here there is no such judgment decisions expected of the rig welders and, consequently, Defendant[] do[es] not discriminate between rig welders [it] hire[s]. In light of the fact that the Plaintiffs do not exercise any initiative or make any judgment decisions on the job site, the Court finds that Plaintiffs' skills are not indicative of independent contractor status.

Id. at 281-82.

The district court's findings on this factor are not clearly erroneous. Although "[t]he lack of the requirement of specialized skills is indicative of employee status," Dole, 875 F.2d at 811, "the use of special skills is not itself indicative of independent contractor status, especially if the workers do not use those skills in any independent way." Martin v. Selker Bros., Inc., 949 F.2d 1286, 1295 (3d Cir. 1991). As noted by the district court, plaintiffs are highly skilled but they did not exercise those skills in any independent fashion in their employment with Flint. Although plaintiffs are not told by Flint how to complete

-14-

a particular weld, they are told by Flint foremen when and where to weld. Accordingly, the fact that plaintiffs use special skills does not necessarily indicate they are independent contractors.

*Integral part of business*

After noting this factor focuses on whether workers' services are a necessary component of the business, the district court found "[r]ig welders are necessary in the construction of all transmission systems projects," and, although "they do not remain on the job site from start to finish, their work is a critical step on every transmission system project." R. I. at 282. These findings are not clearly erroneous. The evidence in the record on appeal clearly indicates rig welders' work is an important, and indeed integral, component of oil and gas pipeline construction work.

*Economic dependence of plaintiffs*

Our final step is to review the findings on each of the above factors and determine whether plaintiffs, as a matter of economic fact, depend upon Flint's business for the opportunity to render service, or are in business for themselves. Dole, 875 F.2d at 804; Brock v. Superior Care, Inc., 840 F.2d 1054, 1059 (2d Cir. 1988). Although Flint urges us to focus on whether plaintiffs rely on Flint for

their subsistence, we believe the question is whether plaintiffs are economically dependent upon Flint during the time period they work for Flint, however long or short that period may be.[1]  In other words, "the dependence at issue is dependence on that job for that income to be continued and not necessarily for complete sustenance."  Halferty v. Pulse Drug Co., Inc., 821 F.2d 261, 267 (5th Cir. 1987).

In arguing plaintiffs are independent contractors, Flint relies heavily on Carrell v. Sunland Const., Inc., 998 F.2d 330, 334 (5th Cir. 1993), where the court held rig welders working for natural gas pipeline construction companies in Louisiana and other states were independent contractors for purposes of the FLSA.  Although we agree the facts here are strikingly similar to those in Carrell, there are factual differences.  For example, the court in Carrell emphasized the rig welders before it were highly skilled, but made no mention of whether those welders were free to exercise their judgment in completing their work.  Here, the district court specifically found that although plaintiffs are highly skilled, they are not free to exercise those skills in any independent manner when they work for Flint.  Plaintiffs are specifically told when and where to weld and have no authority to override those decisions.  They are told when to report to work, when

_____

[1] Flint's suggested focus would lead to outcomes clearly at odds with the FLSA. For example, a low-skilled worker who regularly shifts jobs (e.g., fast food jobs) would never be dependent upon a single employer, or even a single industry, for annual subsistence.  The worker would necessarily be classified as an independent contractor for purposes of the FLSA and would not be entitled to overtime pay.

to take breaks, and when to end their workday.

Aside from differences in historical fact, we also disagree with the finding in Carrell that rig welders have an opportunity to maximize their profits by controlling the costs of their welding supplies and by consistently finding work with other companies. Instead, we agree with the district court that this is not the type of "profit" typically associated with an independent contractor. Generally speaking, an independent contractor has the ability to make a profit or sustain a loss due to the ability to bid on projects at a flat rate and to complete projects as it sees fit. Here, plaintiffs have neither the ability to bid on projects nor to complete their work in an independent fashion.

Ultimately, we agree with the district court and conclude plaintiffs are employees of Flint, rather than independent contractors, for purposes of the FLSA. In most respects, plaintiffs are no different from any other workers hired by Flint and treated as employees. Plaintiffs are hired to complete a job, are told their working hours, are told their hourly pay rate, and are told on what portion of the project they will be working during a given workday. Although plaintiffs are the most skilled workers on the job site, they are not asked to exercise their discretion in applying their skills; they are told what to do and when to do it. The only substantial difference between plaintiffs and the other workers on the job site is that plaintiffs are required to supply equipment to perform their jobs. This

fact alone, however, does not alter the realities of their working situation.  Nor does it allow them to make any type of substantial profit above wages they are paid.  Ultimately, plaintiffs, like other workers hired by Flint, are dependent upon Flint for the opportunity to render services for however long a particular project lasts.

## IV.

The judgment of the district court is AFFIRMED.