William D. JOHNSON et al., Plaintiffs,

v.

UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS and the Housing Authority of Kansas City, Kansas, Defendants.

No. 99–2407–JWL.

United States District Court,
D. Kansas.

Nov. 27, 2001.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Twenty-six plaintiffs filed suit against defendants seeking damages for overtime compensation pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Plaintiffs, full-time police officers commissioned by the Kansas City, Kansas Police Department, worked during their off-duty time as security officers for the Housing Authority. According to plaintiffs, the Unified Government and the Housing Authority are joint employers and, thus, the hours worked for each entity during any given work week should have been combined for the purposes of calculating overtime under the FLSA.

Following a trial on plaintiffs' claims, the jury returned a verdict in favor of defendants. In completing the verdict form submitted by the court, the jury found that plaintiffs failed to prove by a preponderance of the evidence that they were employees of the Housing Authority (rather than independent contractors); that plaintiffs failed to prove by a preponderance of the evidence that the Unified Government and the Housing Authority were joint employers with respect to plaintiffs; that plaintiffs failed to prove by a preponderance of the evidence that any of them had worked in excess of forty-three (43) hours in any given work week for the Unified Government and the Housing Authority; and that defendants proved by a preponderance of the evidence that they plainly and unmistakenly are exempt from paying overtime to plaintiffs pursuant to the special detail exemption of 29 U.S.C. § 207(p)(1).[1]

This matter is presently before the court on plaintiffs' motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial (doc. # 324) pursuant to Federal Rules of Civil Procedure 50(b) and 59(a). Specifically, plaintiffs request the court to overturn each of the jury's four findings and enter judgment in favor of plaintiffs on those four issues because,

---

1. Any one of these findings, standing alone, would have required entry of judgment in favor of defendants. Nonetheless, all parties, including plaintiffs, agreed to have the jury decide each of the four issues, regardless of how the jury decided any particular issue, to avoid the possibility of having to have a new trial in the event that one of the jury's findings was subsequently overturned by this court or the Tenth Circuit. *See* Transcript of Proceedings on August 17, 2001. The parties further agreed that the jury should not be asked to calculate damages if it found against plaintiffs on any of the three liability issues or if it found in favor of defendants on the exemption issue. *See id.* In that regard, the parties agreed that if any portion of the jury's verdict was overturned with a resulting finding of liability, the parties would be able to determine the amount of damages amongst themselves. *See id.*

according to plaintiffs, the evidence presented at trial was entirely insufficient to support the jury's findings. In the alternative, plaintiffs request the court to grant a new trial based on the alleged insufficiency of the evidence and because, according to plaintiffs, the verdict form contained a host of errors. As set forth in more detail below, the motion is denied.

## I. Sufficiency of the Evidence

▉ Judgment as a matter of law "should be cautiously and sparingly granted," *Zuchel v. City & County of Denver*, 997 F.2d 730, 734 (10th Cir.1993), and is appropriate "only if the evidence, viewed in the light most favorable to the nonmoving party, points but one way and is susceptible to no reasonable inferences supporting the nonmoving party." *Riggs v. Scrivner, Inc.*, 927 F.2d 1146, 1149 (10th Cir.1991). Such judgment is proper only when "the evidence so strongly supports an issue that reasonable minds could not differ." *Ryder v. City of Topeka*, 814 F.2d 1412, 1418 (10th Cir.1987). In determining whether judgment as a matter of law is proper, the court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *See Lucas v. Dover Corp.*, 857 F.2d 1397, 1400 (10th Cir.1988). Nevertheless, the court must find more than a mere scintilla of evidence favoring the nonmovant; the court must find that "evidence was before the jury upon which it could properly find against the movant." *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988).

▉ In essence, the court must affirm the jury verdict if, viewing the record in the light most favorable to the nonmoving party, it contains evidence upon which the jury could properly return a verdict for the nonmoving party. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1546 (10th Cir.1996). Conversely, the court must enter judgment as a matter of law in favor of the moving party if "there is no legally sufficient evidentiary basis ... with respect to a claim or defense ... under the controlling law." *Id.* at 1546–47.

### A. Independent Contractor Status

As set forth above, the jury found that plaintiffs failed to prove by a preponderance of the evidence that they were employees of the Housing Authority rather than independent contractors. Plaintiffs maintain that no reasonable jury could conclude from the evidence presented at trial that plaintiffs, while working for the Housing Authority, were independent contractors under the economic realities test set forth in *Dole v. Snell*, 875 F.2d 802 (10th Cir.1989) and *Baker v. Flint Engineering and Construction Co.*, 137 F.3d 1436 (10th Cir.1998).[2] Contrary to plaintiffs' argument, however, considerable evidence was presented at trial from which a reasonable jury could (and did) conclude that plaintiffs were independent contractors as opposed to employees of the Housing Authority.

▉ During the course of the trial, for example, substantial evidence was presented to support the conclusion that the Housing Authority exercised virtually no control over plaintiffs. Several plaintiffs testified that they required no supervision to perform work as Housing Authority patrol officers. Moreover, plaintiffs had substantial flexibility with respect to their work for the Housing Authority, including

---

**2.** To assist the jury in its analysis of the independent contractor issue, the court instructed the jury to consider the economic realities of the working relationship of the parties, including the specific factors as set forth in *Dole* and *Baker*. *See* Jury Instruction No. 15. Plaintiffs did not object to this instruction.

the determination of when, how often and how they performed their patrols. In fact, plaintiffs could switch or cancel their time patrolling without prior approval from any supervisor.

In addition, evidence was presented that plaintiffs controlled their own profit or loss by determining how often they worked for the Housing Authority and whether they wanted to work off-duty security for entities other than the Housing Authority, as several plaintiffs testified they did. Plaintiffs also furnished their own uniforms, firearms and personal protective gear for use in connection with their work for the Housing Authority. Furthermore, the evidence at trial supported the conclusion that the working relationship of the parties was not permanent in nature as most plaintiffs did not work for extended time periods for the Housing Authority.

Evidence was also presented at trial that plaintiffs were highly skilled and trained for the work they performed. Several plaintiffs testified that their skills and training were substantial and exceeded that of a private security guard. No plaintiff required or was given any additional training by the Housing Authority to perform their responsibilities for the Housing Authority security patrol. Finally, the evidence presented at trial clearly supports the conclusion that plaintiffs' work for the Housing Authority was simply not an integral part of the Housing Authority's business. In that regard, the Housing Authority existed and functioned from 1957 until approximately 1992 without the operation of the security program and without the particular patrols at issue in this case. Similarly, the Housing Authority has existed and functioned since February 15, 2001 without such patrols.

In short, ample evidence was presented at trial from which a reasonable jury could conclude that plaintiffs were independent contractors. Stated another way, a reasonable jury could properly conclude that plaintiffs failed to prove by a preponderance of the evidence that they were employees of the Housing Authority. The court will not disturb the jury's verdict on this issue.

### B. Joint Employers

■ The jury also found that plaintiffs failed to prove by a preponderance of the evidence that the Unified Government and the Housing Authority were joint employers with respect to plaintiffs. According to plaintiffs, no reasonable jury could conclude that the Housing Authority and the Unified Government were "completely disassociated" with respect to the security patrol program and that the "interaction" between the Housing Authority and the Unified Government was established by uncontroverted and overwhelming evidence.[3] The court disagrees. In fact, substantial evidence was presented to the jury to support the conclusion that the Housing Authority and the Unified Government were not joint employers. Stated another way, there was a dearth of evidence from which the jury could have concluded that the Housing Authority and the Unified Government were joint employers.

For example, the evidence at trial showed that plaintiffs very rarely, if ever, responded to off-property dispatches from the Unified Government while patrolling for the Housing Authority. In fact, only a few examples of such dispatches were introduced into evidence. Aside from one plaintiff, no person testified at trial supporting plaintiffs' allegations that they were regularly dispatched by the Unified

---

**3.** The court's jury instruction on the joint employment issue was modeled after 29 C.F.R. § 791.2. *See* Jury Instruction No. 17. Plaintiffs did not object to this instruction.

Government, even on Housing Authority property, while they were performing services for the Housing Authority. Moreover, there was virtually no evidence that the Unified Government exercised any control over the work schedules or conditions of employment of plaintiffs while those plaintiffs performed services for the Housing Authority. Similarly, there was no evidence that the Unified Government had the power to hire or fire the Housing Authority patrol officers. There was no evidence that the Unified Government maintained employment records for the Housing Authority, determined the rate or method of payment to plaintiffs for their work as patrol officers for the Housing Authority, prepared the payroll for or paid wages to any of plaintiffs for work performed for the Housing Authority.

As the trial record, viewed in the light most favorable to defendants, contains evidence upon which the jury could properly conclude that Unified Government and the Housing Authority were not joint employers, the court must affirm the jury verdict on that issue.

### C. Forty–Three Hour Work Week

The jury also found that plaintiffs failed to prove by a preponderance of the evidence that any of them had worked in excess of forty-three (43) hours in any given work week for the Unified Government and the Housing Authority. Plaintiffs contend that the uncontroverted evidence at trial "clearly demonstrated that each and every plaintiff worked in excess of forty-three (43) hours per week, *when the hours worked for the Police Department and Housing Authority were combined,* in at least one (1) workweek during

the relevant period of time." (emphasis added). Significantly, plaintiffs conceded that they could not establish the 43–hour requirement unless the jury combined all hours worked for the Housing Authority and for the Unified Government. Thus, if the jury determined that defendants were not joint employers, then the jury would not have combined those hours and would have necessarily concluded that plaintiffs did not meet the 43–hour requirement. In fact, Jury Instruction No. 17 specifically stated that if the jury found that defendants were not joint employers, then they were required to find that the 43–hour requirement was not met. Plaintiffs did not object to this instruction. In sum, in light of the jury's conclusion on the joint employer issue (a conclusion that the court has affirmed), it was required to find that plaintiffs had not established the 43–hour requirement.

### D. Special Detail Exemption

■ Finally, the jury concluded that defendants proved by a preponderance of the evidence that they plainly and unmistakenly are exempt for paying overtime to plaintiffs pursuant to the special detail exemption of 29 U.S.C. § 207(p)(1). In their motion, plaintiffs maintain that the "evidence overwhelmingly established that the (p)(1) exception is not available here" and that the court must therefore direct a verdict in their favor. In the alternative, plaintiffs seek a new trial on this issue alone. Of course, even if the evidence did not support this finding (which, as discussed below, it clearly does), the court would nonetheless affirm the verdict as the jury found against plaintiffs on the independent contractor issue and the joint employers issue.[4]

---

4. In their papers, plaintiffs contend that "since the jury's findings on the first three questions are not supported by the evidence, its finding on [the special detail exemption] is inherently suspect." As set forth in other parts of this opinion, however, the jury's findings on the first three questions were supported by substantial evidence. There is nothing "inherently suspect" about the jury's finding on the fourth question.

The court instructed the jury that defendants, to receive the benefit of the (p)(1) exemption, had to prove that (1) plaintiffs' employment with the Housing Authority was voluntary; (2) plaintiffs were employed on a "special detail" when performing Housing Authority security patrol; and (3) the Housing Authority and the Unified Government were separate and independent employers. *See* Jury Instruction No. 18. The parties stipulated that each plaintiff volunteered to perform security services for the Housing Authority. *See* Jury Instruction No. 19. With respect to the remaining two elements of the exemption, plaintiffs contend that no reasonable jury could have concluded that the security program was a "special detail" or that the Unified Government and the Housing Authority were separate and independent employers. As set forth below, ample evidence was presented at trial to permit the jury to reach both conclusions.

1. Special Detail

The court instructed the jury, in determining whether the plaintiffs were employed on a "special detail," to consider the following:

> A "special detail" is a task or duty outside of or in addition to an employee's regular or normal job duties performed for his or her primary employer, but a special detail need not be limited to a task or duty performed only occasionally or sporadically. An employee performing a "special detail" may engage in the same kind of work that he or she performs as a part of his or her regular job duties, such as law enforcement, but may not simply do work for his or her primary employer under a different guise.

*See* Jury Instruction No. 20.[5] In their motion, plaintiffs contend that "it is simply beyond dispute that what the Housing Authority officers did was police work under a different guise." That argument, however, misses the point. Plaintiffs can do "police work" for the Housing Authority; they cannot be doing the work of the Police Department under a different guise.

As defendants highlight in their papers, evidence was presented at trial that clearly established that the work performed for the Housing Authority was a "special detail" and, more significantly, that plaintiffs were not simply doing the work of the Police Department under a different guise. The work was performed while plaintiffs were off-duty from their employment with the Police Department. Housing Authority shifts were different from the Police Department shifts. While working for the Housing Authority, plaintiffs had the authority to enforce trespass and other rules of the Housing Authority. Moreover, on-duty Police Department patrols were one-man patrols; the Housing Authority used two-man patrols. No transportation of prisoners was ever permitted by on-duty Police Department officers in private cars, but the Housing Authority permitted such transportation in its vehicles.

In addition, on-duty Police Department officers required permission from a supervisor prior to leaving his or her district and prior to taking a break. Housing Authority patrol officers frequently moved from district to district, without permission, in order to patrol the properties owned by the Housing Authority. Similarly, Housing Authority officers did not need to get permission prior to taking a break. Finally, on-duty Police Department officers were dispatched from one call to another throughout his or her assigned district. Housing Authority patrol officers were not so dispatched; their primary responsibilities were to patrol Housing Authority properties.

---

5. Plaintiffs did not object to this instruction.

In brief, ample evidence supported the jury's conclusion that plaintiffs were employed on a "special detail" when performing Housing Authority security patrol.

### 2. Separate and Independent Employers

According to plaintiffs, defendants failed to prove at trial that they are separate and independent employers. Plaintiffs' primary contention in this respect is that the Housing Authority owes its legal existence to the Unified Government.[6] The question framed by plaintiffs' argument is, thus, whether Congress, when it used the word "independent" for purposes of the (p)(1) exemption, intended for that term to apply only to the actual day-to-day operations of the two employers, or whether Congress intended for that term also to apply to the legal relationship of the employers? As all parties concede, there is no case law on this specific issue. In the absence of any authority suggesting otherwise, the court concludes that Congress did not intend to limit the (p)(1) exemption by precluding use of the exemption in those circumstances in which an entity of government was created by and could theoretically be liquidated by another entity as long as, in fact, on a day-to-day basis the "parent" entity was not governing the other entity. By way of analogy, the court views this distinction as similar to the distinction between a sole shareholder who observes the corporate formalities and one who treats the corporation as an alter ego of the shareholder.

Plaintiffs contend that this interpretation "flies in the face" of Judge Kelly's opinion in *Crow v. City of Derby*, No. 91–1267–PFK, 1992 WL 363682 (D.Kan. Nov.13, 1992), where Judge Kelly, according to plaintiffs, emphasized that "potential control is dispositive under the (p)(1) ex-

ception, without regard to the frequency or extent of actual control exercised by the primary employer." Contrary to plaintiffs' suggestion, however, Judge Kelly's opinion discussed "control" in the context of determining whether two employers are joint employers. Thus, Judge Kelly's discussion of control focused on whether the employer controlled the employee's work schedules and conditions of employment. By contrast, here plaintiffs are arguing about the control of one entity over the other entity or, more specifically, the degree of control the Unified Government exerts over the Housing Authority. Thus, plaintiffs' reliance on *Crow v. City of Derby* in this context is misplaced.

Plaintiffs also urge that they are simply asking for a level playing field. According to plaintiffs, "if the defendants are allowed to argue that the Police Department does not control the Housing Authority security program because it always potentially controls the individual officers, then plaintiffs should be allowed to argue that the defendants are not separate and independent because the Unified Government's Board of Commissioners always potentially controls the very existence of the Housing Authority." Of course, plaintiffs were permitted to make and, in fact, did make this argument to the jury. The jury, however, rejected the argument.

The remainder of plaintiffs' arguments with respect to the "separate and independent" element are simply an effort to rehash factual arguments made to and rejected by the jury. Plaintiffs contend, for example, that the amount of interaction between the Unified Government and the Housing Authority exceeds the limits contemplated in (p)(1) because the program was essentially a "joint venture" between the entities. While there was certainly

---

**6.** The evidence at trial established that the Unified Government's Board of Commission-

ers created the Housing Authority and could disband the Housing Authority at any time.

evidence presented at trial that the Unified Government facilitated the security program, the jury was instructed that the Unified Government could facilitate the program without losing the benefit of the exemption. The jury was instructed, for example, that the Unified Government could maintain a roster of officers who wish to perform off-duty law enforcement work and select the officers for off-duty work from that roster; negotiate the pay that the officers will receive for their off-duty employment; retain a fee for the administrative expenses relating to the off-duty employment; and require that the officers observe their normal standards of conduct during their off-duty work and take disciplinary action against those who fail to do so. The court further instructed the jury that this type of "facilitation" could not be construed as an exercise of control. *See* Jury Instruction No. 21.[7]

According to plaintiffs, the fact that the Unified Government controlled (rather than merely facilitated) the Housing Authority security program was made "undeniable clear" by virtue of Chief Swafford's written memorandum to the program's coordinator wherein Chief Swafford essentially stated that "Our on-duty supervisors have not only the right but the duty to control these officers, and any of them who do not agree should get their thinking straightened out immediately." The interpretation of Chief Swafford's statement in the context of all the evidence presented at trial, however, was a matter within the province of the jury and, taken in the light most favorable to defendants, meant only that the Unified Government controlled the officers' activities when the officers were being pressed into activities in the nature of their on-duty work.

In brief, there was substantial evidence presented to the jury to permit the jury to find that the Unified Government and the Housing Authority were separate and independent employers. The jury's verdict with respect to the special detail exemption is affirmed.

## II. Verdict Form

Plaintiffs' motion is based in large part on the verdict form submitted by the court. Specifically, plaintiffs lodge a variety of complaints about the first four questions set forth on the verdict form. These four questions, set forth for each plaintiff, were as follows:

1. Do you find that the plaintiff has proved, by a preponderance of the evidence, that when performing security patrol for the Housing Authority she was an employee of the Housing Authority, as discussed in Instruction 15?

2. Do you find that the plaintiff has proved, by a preponderance of the evidence, that the Unified Government and the Housing Authority were "joint employers," as that term is defined in Instruction 17?

3. Do you find that the plaintiff has proved, by a preponderance of the evidence, that she worked more than 43 hours in a work week for the Unified Government and the Housing Authority, as discussed in Instruction 17?

4. Do you find that the defendants have proved, by a preponderance of the evidence, that they are plainly and unmistakenly exempt from paying the plaintiff overtime by the Special Detail exemption, as discussed in Instruction 18–21?

Based on the agreement of all parties,[8] the jury was required to answer each of these four questions regardless of any particular answer to any question. They would have

---

7. Plaintiffs did not object to this instruction.

8. See supra note 1.

proceeded to answer the fifth question relating to damages only if they answered "yes" to the first three questions and "no" to the fourth question.

According to plaintiffs, the verdict form submitted to the jury was faulty in several respects. With respect to the independent contractor issue (the first question on the verdict form), plaintiffs complain that the verdict form did not contain special interrogatories on each of the six factors of the economic realities test set forth by the Circuit in *Dole* and *Baker*. Plaintiffs assert that "it is impossible to tell from the verdict form which of those factors the jury found tended to show independent contractor status." Plaintiffs further assert that the court should have used the jury's specific findings on each of the six factors to resolve the legal question of whether plaintiffs were independent contractors or employees rather than permitting the jury to resolve that question. Similarly, with respect to the special detail exemption (the fourth question on the verdict form), plaintiffs complain that the verdict form did not contain special interrogatories on each of the separate components of the exemption. In addition to plaintiffs' concerns regarding the lack of special interrogatories on the independent contractor and special detail exemption issues, plaintiffs also assert that the verdict form essentially had a "domino effect" of compelling the jury to find in favor of defendants after it found in favor of defendants on the initial question, the independent contractor issue. With respect to the joint employer issue (the second question on the verdict form), for example, plaintiffs contend that the jury somehow felt "compelled" to find for defendants "because it had already found that plaintiffs were in-

dependent contractors." Similarly, plaintiffs argue that "it seems quite likely that, once the independent contractor finding was made, the jury answered the next three questions consistent with a defendants' verdict and not irrespective of the independent contractor finding." In short, plaintiffs maintain the jury's finding on the independent contractor issue tainted the rest of the verdict.[9]

■■■ As an initial matter, the particular language used in a verdict form is within the sound discretion of the court. *See Webb v. ABF Freight System, Inc.,* 155 F.3d 1230, 1249 (10th Cir.1998) (noting that the language of a verdict form is reviewed under the same abuse of discretion standard that the Circuit applies to jury instructions). Moreover, the problem with plaintiffs' complaints with respect to the verdict form is that plaintiffs failed to raise these objections at any time prior to the filing of their motion. Rule 51 of the Federal Rules of Civil Procedure states that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." The purpose of the specificity requirement is to give the district court an opportunity to correct any mistake before the jury enters its deliberations. *See Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 553 (10th Cir.1999); *Weir v. Federal Ins. Co.,* 811 F.2d 1387, 1390 (10th Cir.1987). Accordingly, "the grounds stated in [an] objection must be obvious, plain, or unmistakable." *Id.* (quoting *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1514 (10th Cir.1984)). An objection is adequate to preserve the

---

9. While it is not entirely clear from plaintiffs' papers, plaintiffs apparently believe that the verdict form should have directed plaintiffs to assume that plaintiffs were employees (and not independent contractors) of the Housing Authority for purposes of answering the final three questions.

issue if it "identified the objectionable instruction and denoted the legal grounds for the objection." *Weir,* 811 F.2d at 1390 (quoting *Taylor v. Denver and Rio Grande W.R.R. Co.* 438 F.2d 351, 353 (10th Cir. 1971)).

 The court has carefully reviewed the transcript of the instruction conference held on August 20, 2001 and the transcript of a detailed discussion the court held with the parties on the afternoon of August 17, 2001 concerning the verdict form. While plaintiffs raised certain concerns about the court's verdict form, none of those concerns had anything to do with the specific issues about which they now complain. In fact, plaintiffs' primary concern about the verdict form was the manner in which the form required the jury to calculate damages. Plaintiffs raised no objections to the four specific questions initially set forth with respect to each plaintiff-the questions about which they now complain. Moreover, plaintiffs expressly agreed that all four questions should be submitted to the jury, regardless of the jury's determination on any particular issue, for purposes of preserving the record on appeal. The court has also reviewed the verdict form proposed by plaintiffs at the time of trial. Plaintiffs' form did not even include the four questions found on the court's form, let alone special interrogatories or the like. Plaintiffs' form contained only one question for each plaintiff: "Do you find from a preponderance of the evidence that the defendants failed to pay the plaintiff the overtime pay required by law?" Plaintiffs' form, then, is wholly inadequate to preserve the objections now made by plaintiffs.

An additional comment is warranted with respect to plaintiffs' argument that the ultimate question of whether plaintiffs were employees or independent contractors is a legal question that should have been resolved by the court rather than the jury. During the trial of this case, the court and the parties faced precisely the same issue in connection with the (p)(1) exemption. Specifically, the court and the parties struggled with the proper allocation of the court's functions and the jury's functions in terms of applying the (p)(1) exemption in light of the certain language in the Tenth Circuit's opinion in *Reich v. State of Wyoming,* 993 F.2d 739, 741 (10th Cir.1993) (in bench trial concerning whether certain employees were exempt from the FLSA under the professional exemption, Circuit stated that the question of how employees spend their time is a question of fact and the question of whether their particular activities excluded them from overtime benefits is a question of law). Ultimately, the court and all parties, including plaintiffs, agreed that the questions of fact and the questions of law for purposes of the (p)(1) exemption were inextricably intertwined such that the jury should decide the ultimate issue concerning the applicability of the (p)(1) exemption. *See* Transcript of Proceedings on August 15, 2001.[10] For this reason, the court adopted the same approach with respect to the independent contractor issue. Again, plaintiff did not object to such an approach.

 In any event, given that plaintiffs did not object to the verdict form for the reasons they now assert, the court reviews the verdict form only for "plain error." A court will reverse an instruction under the plain error standard only in "an exceptional circumstance-one where the error was 'patently plainly erroneous and prejudicial.'" *Giron v. Corrections Corp.*

**10.** The parties' briefs on the issue also reflect this agreement. *See* Documents 310, 312 and 314.

of Am., 191 F.3d 1281, 1289 (10th Cir.1999) (quoting *Aspen Highlands,* 738 F.2d at 1516); *see Medlock,* 164 F.3d at 553. Moreover, the party claiming plain error has "the heavy burden of demonstrating fundamental injustice." *Medlock,* 164 F.3d at 553. This "rarely" applied "narrow exception" to Rule 51 does not assist plaintiffs here. *See Cadena v. Pacesetter Corp.,* 224 F.3d 1203, 1212 (10th Cir.2000).[11] The court is satisfied that its verdict form did not result in a fundamental injustice to plaintiffs. This case was thoroughly and thoughtfully tried by experienced and competent counsel who specialize in labor relations litigation. The instructions were carefully crafted with the input of counsel and the verdict form was structured to carry out counsel's requests on the determination of liability. If not a perfect trial, plaintiffs received a plainly fair one and were not prejudiced by the verdict form to which, in pertinent part, they readily agreed.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial (doc. # 324) is **denied.**

**IT IS SO ORDERED.**

---

11. As the Tenth Circuit has recognized, it "is interesting to note that the Federal Rules of Civil Procedure reference neither the patent-

ly-plainly-erroneous-and-prejudicial standard." *See Cadena v. Pacesetter Corp.,* 224 F.3d 1203, 1211 n. 6 (10th Cir.2000).