**Nancy E. HARBERT, Plaintiff,**

v.

**HEALTHCARE SERVICES GROUP, INC., Defendant.**

**No. CIV.A. 00–K–908.**

United States District Court, D. Colorado.

Sept. 28, 2001.

1102

Clifford L. Beem, Beem & Mann, P.C., Denver, CO, Susan, for Plaintiff.

Susan L. Sperber, Jennifer Lyn Carr, Rothgerber, Johnson & Lyons, LLP, Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This employment case turns on the application of the Family Medical Leave Act. The specific question raised is whether the plaintiff was wrongfully denied 12 weeks of leave by her employer, Defendant, Healthcare Services Group, Inc.

In May, 2000 the Plaintiff, Nancy E. Harbert ("Ms.Harbert") filed a complaint against the Defendant, Healthcare Services Group, Inc. ("HSG") alleging violations of the Family Medical Leave Act of 1993 ( "FMLA" or the "Act").—— Both parties have filed motions for summary judgment on the issue of whether Ms. Harbert was jointly employed by HSG and Sunset Manor (Sunset)[1] for purposes of the FMLA.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The evidence is viewed in the light most favorable to the nonmoving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). A court does not weigh evidence, rather a court considers "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Jeffries v. Kansas Dept. Of Soc. & Rehab. Servs.*, 147 F.3d 1220, 1228 (10th Cir.1998) (internal quotation marks and citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotations and citations omitted).

1. Sunset Manor is a nursing home in Brush, Colorado for which HSG provided housekeeping services. HSG is a large national company with several hundred employees in the metro area.

## CONCLUSION

Whether Ms. Harbert was jointly employed by HSG and Sunset Manor must be submitted to a jury, and the cross motions for summary judgment on that issue are denied. HSG's remaining arguments are either without merit or inapposite, so I deny HSG's motion for summary judgment on the remaining issues as well.

## UNDISPUTED FACTS

From about November 4, 1994 to February 15, 1999, Ms. Harbert worked as a housekeeping and laundry supervisor at Sunset.[2] In November, 1997, Sunset contracted with HSG to provide its housekeeping and laundry services including all necessary management, supervision, labor and materials necessary to perform these services at Sunset. Just before the agreement took effect, Ms. Harbert was hired by HSG. After hiring Ms. Harbert, HSG took over all responsibility for retaining, transferring, or firing Ms. Harbert, for paying her salary and for providing all of her benefits. HSG honored all of Sunset's policies concerning "vacation, holiday, sick, bereavement and jury duty pay" at the time Ms. Harbert was hired.

As an HSG employee, Ms. Harbert's title was "healthcare account manager" and she reported to Christopher Stockert ("Mr.Stockert"), a district manager at HSG's regional office in Golden, Colorado. Ms. Harbert continued as a department head at Sunset, directly supervising seven other HSG housekeeping and laundry employees with little change in her overall responsibilities. She submitted monthly reports to both the administrator of Sunset and Mr. Stockert.

According to HSG, Ms. Harbert was a "working supervisor/manager." Approximately 75% of her job was manual labor which included heavy housekeeping such as mopping, buffing, sweeping, vacuuming, dusting and using heavy machines for "at least two hours per day" including buffers, a bonnet machine for stripping and waxing floors, and vacuums.

On November 6, 1998, Ms. Harbert was injured in a non-work related automobile accident. Because of her injuries, Ms. Harbert was unable to perform her work, although she tried to do so several times during the month of November. She requested a leave of absence from Mr. Stockert on November 23, 1998 and was granted a 30–day leave beginning on December 8, 1998. On January 7, 1999, Ms. Harbert informed Mr. Stockert that she was still unable to return to work and he inquired whether Ms. Harbert was eligible for FMLA leave. Mary Perotto, a Benefits Administrator for HSG, determined that Ms. Harbert was not eligible for FMLA leave.[3] Ms. Harbert was informed that her FMLA leave was denied on January 14, 1999 and she was told that she could take another 30–day leave of absence.

At the end of her second 30–day leave, Ms. Harbert contacted Mr. Stockert and told him she wanted to return to work. Mr. Stockert told her that she could return when she was "100%." At that point she had been on leave for a total of approximately nine weeks.

Ms. Harbert's doctor, Dr. Clise, released her back to work on February 10, but limited her to twenty hours per week pending re-evaluation after two weeks. Ms Harbert stayed in contact with Mr.

---

2. Ms. Harbert was originally hired as a housekeeping supervisor. She was made supervisor of Sunset Manor's laundry department in January, 1995 and thereafter held both positions.

3. This conclusion was based on HSG's determination that Ms. Harbert was not employed at a worksite at which HSG employed 50 or more employees within a 75–mile radius.

Stockert during this time. Two weeks later Dr. Clise did not modify his prior recommendations. He felt that limiting her hours to twenty hours per week was sufficient.

On February 20, 1999, Ms. Harbert received a notice of termination of employment from Mr. Stockert. The notice stated that Ms. Harbert was terminated "for not complying with the requirements of [her] 30 day leave of absence," and it concluded, "[i]f and when you are able to come back to work in full capacity, [HSG] will consider you for a position, granted that we have one available." This was the last communication between Ms. Harbert and HSG.

## DISCUSSION

The Family Medical Leave Act of 1993 [4] defines eligible employee as an employee who has been employed—(I) for a least 12 months by the employer . . .; and (ii) for at least 1,250 hours of service with such employer during the previous 12–month period. *Id.* § 2611(2)(A)(I), (ii). An employee is not eligible, however, if she "is employed at a worksite at which [her] employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." *Id.* § 2611(2)(B)(ii).[5]

Ms. Harbert argues that she does qualify for FMLA leave if HSG and Sunset are joint employers. Regulations promulgated in conjunction with the FMLA explain how joint employment is treated under the Act. 29 C.F.R. § 825.106(a) provides "[w]here two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA." Determination of whether a joint employment relationship exists requires analysis of several factors:

Where the employee performs work which simultaneously benefits two or more employers . . ., a joint employment relationship generally will be considered to exist in situations such as:

(1) Where there is an arrangement between employers to share an employee's services or to interchange employees;

(2) where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,

(3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under *common control* with the other employer. *Id.* at § 825.106(a)(1), (2), (3).

Whether a joint employment relationship exists "is not determined by the application of any single criterion, but rather the entire relationship is to be viewed in its totality." *Id.* at § 825.106(c). When a joint employment relationship does exist, "the employee's worksite is the primary employer's office from which the employee is assigned or reports." *Id.* § 825.111(a)(3).[6]

Ms. Harbert contends that HSG's regional office in Golden, Colorado is her "worksite"and measuring from that office, HSG easily meets the $^{50}/_{75}$ requirement and

---

**4.** Section 2612(a)(1) of the FMLA provides in relevant part that

[A]n eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period . . .

(D) because of a serious health condition that makes the employee unable to perform the functions of the position of such employee

**5.** This exception will hereafter be referred to as the "50/75 requirement."

**6.** It is undisputed that HSG is Ms. Harbert's primary employer.

thus she would have been entitled to FMLA leave.

HSG first argues that Ms. Harbert was employed at a worksite (Sunset) where HSG did not meet the 50/75 requirement.[7] Second, HSG asserts that it is an independent contractor, therefore none of the criteria set out in § 825.106 accurately describe the relationship between HSG and Sunset. Alternatively, HSG asserts that even if Ms. Harbert could be considered a joint employee, it "would be contrary to the plain … language [of the Act]" to find Ms. Harbert eligible for FMLA benefits because her worksite failed to meet the $^{50}\!/_{75}$ requirement[8]. Finally, HSG argues that even if Ms. Harbert had been entitled to FMLA leave, HSG is not liable because Ms. Harbert could not return to her position within twelve weeks.

■ Because the FMLA is such recent legislation, there is little case law interpreting the question of joint employment under the Act. What little there is, however, suggests that "the FMLA's definition of employer tracks the [Fair Labor Standards Act ("FLSA")]'s definition and a consultation of the case law interpreting the FLSA is appropriate.[9] *Sherry v. Protection, Inc.*, 981 F.Supp. 1133, 1135 (N.D.Ill.1997) (citations omitted); *see also* Henry W. Sledz, Jr. & John J. Lynch, *The Legal Ramifications of Using Independent Contractors, Temporary Agency Employees, Leased Workers*, 9–Nov CBA Rec. 20, 25 (1995) ("because the [FMLA] expressly adopts the FLSA definition of employee, the courts will likely apply the same analysis as they would under FLSA.")[10].

■ In the Tenth Circuit, whether one is an employer under the FLSA is determined by applying an "economic realities" test. *See Goldberg v. Whitaker*, 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961); *Henderson v. Inter–Chem Coal Co., Inc.*, 41 F.3d 567, 570 (10th Cir.1994). Under this test, the inquiry is not limited to "traditional common law concepts of 'employee' or 'independent contractor' " or "contractual terminology." *Henderson*, 41 F.3d at 570, *see also Boire v. Greyhound Corp.*, 376 U.S. 473, 481, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964) (finding status of employer as independent contractor is immaterial because focus of joint employment inquiry is on *employees*, not employers). Rather, "the Court must simply 'focus upon the circumstances of the whole activity and the economic reality of the relationship.' " *Szymula v. Ash Grove Cement Co.*, 941 F.Supp. 1032, 1036 (D.Kan.1996) (quoting *Johns v. Stewart*, 57 F.3d 1544, 1559 n. 21 (10th Cir.1995)).

---

**7.** Both parties stipulate that HSG employed fewer than 50 employees within 75 miles of Sunset at all relevant times.

**8.** According to this theory, if the application of 29 C.F.R. § 825 .111(a)(3)· allows HSG to be held liable under the Act—a result that contravenes the unambiguously expressed intent of Congress and the regulation must be struck down as invalid and unenforceable.

**9.** In their briefs, neither party looks to the FLSA's treatment of joint employment. Rather, both parties spend a great deal of energy analyzing the language of 29 C.F.R. § 825.106(a)(1), (2), and (3), and determining whether the relationship between HSG and Sunset fits any of those situations. As the case law demonstrates, this approach is not adequate by itself to reach a determination whether a joint employment relationship exists.

**10.** This approach makes sense not only because the FMLA adopts the same definition of employer as the FLSA, but also because the regulation addressing joint employment under the FLSA contains identical language to that used in 29 C.F.R. § 825.106(a)(1), (2), and (3). *See* 29 C.F.R. § 791.2(b)(1), (2), and (3). Therefore, FLSA case law is relied upon in assessing both parties' claims regarding the parties' status as joint employers.

The inquiry should focus on whether an employer "possesse[s] sufficient indicia of control to be an 'employer'" under the Act. *Boire*, 376 U.S. at 481, 84 S.Ct. 894. "The Tenth Circuit adheres to no single set of factors in undertaking this analysis." *Id.*[11] When evaluating whether a joint employment relationship exists, the "nature and structure of the employment relationship" is considered "to determine whether the economic realities justify a finding of joint employment . . . ." John R. Paddock, Jr., *Colorado Employment Law and Practice* vol. 16 § 3.22, 110 (West, 1998).

It is undisputed in this case that HSG was entirely responsible for paying Ms. Harbert's salary and for providing her benefits. It also appears, however, that Sunset exerted considerable control over determining Ms. Harbert's work schedule, work responsibilities and work conditions. From the record it is impossible to determine how much control Sunset's administrator had over Ms. Harbert. Given the fact-driven nature of the "economic realities" test when it is applied to joint employment relationships, it is inappropriate to determine solely on the record whether Ms. Harbert was jointly employed by HSG and Sunset. HSG's independent contractor argument simply doesn't apply because the focus is on the employee not the legal relationship between the employers.

■ HSG argues that even if Ms. Harbert is a joint employee, reading [§ 825.111(a)(3)] in a manner that would result in Ms. Harbert being an 'eligible employee,' is contrary to the plain statutory language of the FMLA and is therefore, invalid and unenforceable. According to HSG, the definition of "worksite" in regulation § 825.111(a)(3) is inconsistent with one of the stated goals of the FMLA: to "balance the demands of the work place with the needs of families . . . in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(1), (3). HSG contends, § 825.111(a)(3) also contradicts the plain language of § 2611(2)(B) of the Act itself which spells out the 50/75 requirement and under *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the regulation should be struck down as invalid and unenforceable.

■ This argument fails under the standards described in *Chevron*. First, § 825.111(a)(3) does not contradict the express terms of the FMLA. Rather, the regulation defines "worksite" in the context of joint employment. The statute itself does not provide a definition of "worksite," and thus, by its omission, Congress has "[expressly delegated] . . . authority to the [Department of Labor] to elucidate a specific provision of the statute by regulation." *Chevron*, 467 U.S. at 843–44, 104 S.Ct. 2778. "Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. 2778. The Supreme Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it has been entrusted to administer." *Id.*

Finally, HSG argues that because Ms. Harbert was not able to return to her job within 12 weeks, it should not be liable for providing her FMLA benefits. To support

---

**11.** Under some circumstances, the Tenth Circuit has used multi-factor tests to determine when one is an employer under the FLSA. *See, e.g., Doty v. Elias*, 733 F.2d 720, 722–23 (10th Cir.1984) (test for determining whether worker is an "independent contractor" or "employee"); *Reich v. Parker Fire Protection Dist.*, 992 F.2d 1023, 1026–29 (10th Cir.1993) (test for determining whether worker is "trainee" or "employee"). These tests, however, are not applicable here.

this argument, HSG relies on three cases, all of which address the question whether an employer's failure to designate leave "FMLA leave" constitutes "interference" with an employee's right to FMLA benefits. *See Ragsdale v. Wolverine Worldwide, Inc.,* 218 F.3d 933, 935–39 (8th Cir. 2000); *Sarno v. Douglas Elliman–Gibbons & Ives, Inc.,* 183 F.3d 155, 160–62 (2d Cir.1999); *McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1307–08 (11th Cir.1999). This argument and the case law supporting it are not relevant to the disposition of this motion. The cases HSG relies on all involve situations where the employee had already been granted at least 12 weeks of leave. The issue here is whether Ms. Harbert was eligible for FMLA leave in the first place, not whether she could have returned to work after the 12 weeks of leave had expired.

Both of the motions are denied.