**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 7 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WILLIAM D. JOHNSON, DAVID N.
KEARNEY; MICHAEL A. KILL;
ALEXANDER G. KUMP; ROBERT L.
LANE, JR.; JOHN W. NASH; JASON
W. SUTTON; SOPHIA BARAJAS;
MICHAEL BOWMAN; JAMES
BRINKLEY; WILLIAM
CARPENTER; LARRY
CHRONISTER; GREGORY
COLLINS; GREGORY CONCHOLA;
CHAD COWHER; MICHAEL
HUGHES; KYNARD HYLTON;
THOMAS JOYCE; RICHARD
KEITH; PATRICK MCCALLOP;
WILLIAM MICHAEL; ANGELA
MITCHELL; MICHAEL VEGA;
JACKIE WATERS; STEVE
WILLIAMS; TERRY ZEIGLER,

      Plaintiffs - Appellants/Cross-
      Appellees,

v.

THE UNIFIED GOVERNMENT OF
WYANDOTTE COUNTY/KANSAS
CITY, KANSAS and THE HOUSING
AUTHORITY OF KANSAS CITY,
KANSAS,

      Defendants - Appellees/Cross-
      Appellants.

Nos. 01-3398, 02-3005 and 02-3014

Steve A.J. Bukaty, (Luke B. Harkins with him on the briefs) Steve A.J. Bukaty, Chartered, Overland Park, Kansas, for the Plaintiffs-Appellants/Cross-Appellees.

Gregory P. Goheen, (Daniel B. Denk, with him on the brief) McAnany, Van Cleave & Phillips, P.A., Kansas City, Kansas, for Defendant-Appellee/Cross-Appellant Unified Government of Wyandotte County/Kansas City, Kansas.

Thomas R. Buchanan, (Donald G. Scott with him on the brief) McDowell, Rice, Smith & Gaar, Kansas City Missouri, for Defendant-Appellee/Cross-Appellant The Housing Authority of Kansas City, Kansas.

Before **O'BRIEN, HOLLOWAY** and **McWILLIAMS**, Circuit Judges.

**HOLLOWAY**, Circuit Judge.

## I

### A

Plaintiffs/appellants are police officers employed by defendant/appellee Unified Government of Wyandotte County/Kansas City, Kansas (an entity formed by the merger of Kansas City, Kansas and Wyandotte County) who worked in their off-duty hours as security guards for defendant-appellee, the Housing Authority of Kansas City. The twenty-six plaintiffs brought this action (which consolidated two separately filed lawsuits) seeking recovery for overtime

compensation under the Fair Labor Standards Act (FLSA or the Act).[1] They contended that the Housing Authority and the Unified Government were joint employers under the FLSA so that hours worked for both defendants during any work week should have been combined for purposes of determining whether plaintiffs were due overtime pay.

The case was tried to a jury and, as set out *infra*, almost all issues were submitted for the jurors' determination. The jury found for the defendants on all issues. The district judge denied plaintiffs' post-trial motion for judgment as a matter of law or for a new trial. *Johnson v. Unified Govt. of Wyandotte County*, 180 F.Supp. 2d 1192 (D. Kan. 2001).[2] Plaintiffs now bring this appeal from the final judgment. Each defendant filed a cross-appeal. The cross-appeals were not briefed and are deemed to have been abandoned. *See Bledsoe v. Garcia*, 742 F.2d 1237, 1244 (10th Cir. 1984). Accordingly we dismiss the cross-appeals.

Plaintiffs invoked the district court's jurisdiction under 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 & 1337. This court has appellate jurisdiction under 28 U.S.C. § 1291.

---

[1]The Act is codified at 29 U.S.C. §§ 201 *et seq.*

[2]The district judge issued thoroughly reasoned opinions denying certain pre-trial motions in these cases as well. *See Johnson*, 127 F.Supp.2d 1181 (D. Kan. 2000), and *Barajas v. Unified Govt.*, 87 F.Supp.2d 1201 (D. Kan. 2000).

**B**

The Housing Authority was created under state and federal statutes to provide housing for low income tenants.  The security patrols that have given rise to the dispute underlying this litigation were funded under legislation passed by Congress in 1988 to address the impact of illegal drugs in public housing.[3]  The Public Housing Drug Elimination Pilot Program, created under the authority of this legislation, provided for grants to be used in public housing projects for, among other things, the employment of security personnel.  The Housing Authority received a grant under this program which resulted in the use of the off-duty police officers as security officers for the projects administered by the Housing Authority.

To take advantage of the grant monies made available under this legislation, the City of Kansas City, Kansas (before its merger with Wyandotte County created the Unified Government) and the Housing Authority entered into a "memorandum of understanding" for the employment of off-duty officers of the former as security officers for the latter.  Under this agreement, the city agreed to provide two marked police cars and radio and dispatch backup to be used by the off-duty officers when serving as security patrols for the Housing Authority.  II Aplt. App. 270-72.  Officers had to complete an application to the Police

---

[3]*See* 42 U.S.C. §§ 11901 *et seq.*

Department and receive permission for any off-duty work, including that with the Housing Authority. *Id*. at 61, 109. Officers were limited to 20 off-duty hours of employment per week, with no more than four hours per day on any day when the officer was on duty with the Police Department. All off-duty employment was at the option of the individual officer; in other words, this was strictly a voluntary program.

Additional facts are noted in connection with the legal analysis which follows.

## II

To establish their entitlement to overtime compensation the plaintiffs had to convince the court and the jury that they were employees of the Housing Authority, as opposed to independent contractors;[4] that the Housing Authority and the Unified Government should be regarded as joint employers;[5] and that they had worked more than 43 hours in any week for which they sought recovery.[6] Even if the plaintiffs had prevailed on each of those three issues, the law provides an

---

[4]*See Baker v. Flint Engineering & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).

[5]*See* 29 C.F.R. § 791.2.

[6]The 43 hour per week standard, rather than the usual 40 hour per week standard, applies to law enforcement personnel. *See* 29 U.S.C. § 207(k); 29 C.F.R. § 533.230(c). Other elements of the claim are of no concern to us in this appeal. The division of duties between judge and jury is discussed *infra*.

affirmative defense called the "special detail exception," which was invoked by these defendants. *See Johnson*, 180 F.Supp.2d at 1197-1200. The parties agreed to submit all of these issues to the jury, which decided all of them in favor of the defendants.[7] As the district judge pointed out, plaintiffs had to prevail on each of these issues to recover. *Id.* at 1194, n.1.

Consequently, plaintiff have, of necessity, raised each of these issues on appeal. But it is not necessary for us to decide each issue, and prudence counsels against doing so. Because we conclude that sufficient evidence supported the jury findings that the plaintiffs were not employees of the Housing Authority, but were instead functioning as independent contractors when they patrolled as security guards, we will not decide the other issues mentioned above.

We review the denial of a motion for judgment as a matter of law based on the ground of insufficiency of the evidence *de novo*, using the same legal standard as the district court.

> A party is entitled to judgment as a matter of law only if the "evidence points but one way and is susceptible to no reasonable inferences supporting the party opposing the motion." In reviewing the record, we "will not weigh evidence, judge witness credibility, or challenge the factual conclusions of the jury." Judgment as a matter of law is appropriate if there is no legally sufficient evidentiary basis

---

[7]The trial judge was well aware of authority such as *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989), discussed *infra*, that the ultimate question on these issues is one of law. But "the court and the parties struggled with the proper allocation of the court's functions and the jury's functions" in applying the principle. 180 F.Supp.2d at 1202.

for a claim under the controlling law. We consider the evidence, and any inferences drawn therefrom, in favor of the non-moving party.

*Brown v. Gray*, 227 F.3d 1278, 1285 (10th Cir. 2000) (internal citations omitted) (quoting *Deters v. Equifax Credit Info. Servs., Inc.* 202 F.3d 1262, 1268 (10th Cir. 2000)).

As a rule, the ultimate question is one of law, with the fact finder's underlying determinations reviewed only for clear error. *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989). Here, however, we are presented with something of an anomaly. Apparently because the district court and the parties found this rule to be vexingly difficult to apply in the practical setting of a jury trial, the parties agreed to submit this issue to the jury (along with other similar "ultimate" questions that need not concern us here). *See Johnson*, 180 F.Supp.2d at 1202. Consequently, we review the denial of the post-trial motion for judgment as a matter of law only for the sufficiency of the evidence to support the jury's decision. Had the trial court made the ruling as one of law, our review would have been *de novo* on the ultimate question. But for us now to make a *de novo* determination whether the plaintiffs should be regarded as employees of the Housing Authority under the FLSA would be counter to the doctrine of invited error. *See Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1229 (10th Cir. 2003). The plaintiffs cannot agree to submit the question to the jury and still

enjoy the benefit of the *de novo* standard of review that we would have applied to the district judge's determination of the ultimate issue in the absence of that stipulation.

As applied to the plaintiffs in this case and their relationship to the defendants, the FLSA generally defines an employee as "any individual employed by a . . . political subdivision of a State . . . ." 29 U.S.C. § 203(e)(1), (e)(2)(C). The terms "employ" and "employer" are given similarly broad but vague definitions.[8] The "striking breadth" of these definitions "stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency principles." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (quoted in *Baker v. Flint Engineering & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998)).

Accordingly, in determining whether the plaintiffs were employees of the Housing Authority, our analysis "is not limited by traditional common law concepts" but focuses on the economic realities, "and the focal point is 'whether the individual is economically dependent on the business to which he renders service . . . or is, as a matter of economic fact, in business for himself.'" *Dole v.*

---

[8]"Employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The verb "employ" is defined to mean "suffer or permit to work." 29 U.S.C. § 203(g). *See Baker v. Flint Engineering & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998).

*Snell*, 875 F.2d 802, 804 (10th Cir. 1989) (quoting *Doty v. Elias*, 733 F.2d 720, 722-23 (10th Cir. 1984)).  In *Doty*, we listed five factors (derived from *United States v. Silk*, 331 U.S. 704, 716 (1947)) which are generally considered in applying this test:

> (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; and (5) the degree of skill required to perform the work.

733 F.2d at 723.  "An additional commonly considered factor is the extent to which the work is an integral part of the alleged employer's business." *Dole v. Snell*, 875 F.2d at 805.  None of the factors is to be considered dispositive; the test is instead based on the totality of the circumstances. *Id*.  The instruction to the jury on this issue included each of the factors mentioned above and was submitted without objection.  Supp. App. 17-19.

The record includes substantial evidence indicating that the Housing Authority exercised very little control over the plaintiffs as they conducted the security patrols.  The security guards could come and go as they pleased within the times from 4 p.m. to 2 a.m. *Id.* at 102, 113.  Starting times were flexible, depending on the individual's needs. *Id*. at 54-55, 75.  If needed, an officer could go home after having worked only two hours. *Id.* at 93-94.  When on duty as a police officer, an individual had to get permission for breaks, but this was not so

when the individual was working as a security guard for the Authority. *Id.* at 142-43. A police officer while on duty had to have permission to leave her assigned district. In contrast, the Authority had properties in different divisions and districts, and the security guards did not need permission to move from one project to another in a different district. *Id.* Plaintiffs had little supervision while on security duty for the Authority. *Id.* at 85. From this evidence, the jury could reasonably have concluded that the degree of control exercised by the Housing Authority was minimal and that this factor clearly weighed in favor of regarding the plaintiffs as independent contractors rather than employees of the Authority.

Did the plaintiffs have the opportunity for profit or loss? The plaintiffs could not have lost money from their efforts for the Housing Authority. Certainly, then, their circumstances differed from those of some independent contractors. However, the flexibility that was afforded them in determining the number of hours that they worked made their circumstances rather different from those of most employees as well. The jury could have viewed this factor as not favoring either side.

As to the degree of skill involved in the actual labors, the officers who served as security guards had been trained by the police department and did not need further training. Supp. App. at 62-63; 97-98. As to whether the work was integral to the Housing Authority's business, the evidence was that the Authority

had functioned for years before and after the program without the security patrols.

Without the complete record, we cannot conduct the thorough review that is usual in a sufficiency of the evidence challenge, and obviously we have not addressed each of the pertinent factors identified above. Nevertheless, having identified sufficient evidence on several of the factors, we cannot say that the jury's decision on the independent contractor issue was without support in the evidence. We are therefore bound by that decision.

**III**

Plaintiffs contend that the jury instructions and verdict form used by the district court were unfairly prejudicial to them because of the sheer volume of work the jury would have been required to perform in order to find in favor of plaintiffs. We review decisions as to both jury instructions and special verdict forms under the abuse of discretion standard. *Webb v. ABF Freight System, Inc.*, 155 F.3d 1230, 1249 (10th Cir. 1998).

Plaintiffs assert that due to the verdict form used, a verdict in their favor would have required the jurors "to literally copy down hundreds of lines of damages amounts, taken from exhibits created by Plaintiffs' damages expert." Appellants' Brief at 13. Plaintiffs also contend that Instruction 24, an instruction on damages referred to in the verdict form, was confusing, apparently for the same reason. In addressing the contention in ruling on plaintiffs' objection to

Instruction 24 at trial, the district judge said:

> This jury[,] I do not believe[,] is going to be stampeded on some decision based upon what is the easiest thing for them to do. I believe they have been very attentive, very tuned in to this case. I don't believe the actual math they will have to do if they get to the damages calculations is all that awesome a task for them because the plaintiffs' exhibits are so clearly laid out to correlate with that formula and with the verdict form that, as much as I wish we could do it a different way, I believe that for all the reasons I stated earlier it's appropriate to leave it that way.

II Aplt. App. 630.

We think it clear that the district judge's reasoning applies to the verdict form as well as to Instruction 24, even though the latter was the point the judge was specifically addressing in these remarks. We have no basis for disagreeing with the trial judge's assessment of the diligence of the jurors, and this alone suggests that the plaintiffs' argument has little force. Furthermore, plaintiffs' brief asserts that their damages exhibits and special interrogatories they had proposed would have greatly simplified the jury's task. But we cannot make the suggested comparison because plaintiffs have not provided citations to the record to enable us to find the trial exhibits and proposed special interrogatories (which do not appear to be included in their appendix).

Plaintiffs say that the essence of their complaint is that the instruction and verdict form were contrary to the "burden shifting rule on damages in FLSA cases" discussed in *Hearnsberger v. Gillespie*, 435 F.2d 926 (8th Cir. 1970). We

presume that plaintiffs' reference is to that portion of the Eighth Circuit's opinion

in which the court quoted and followed *Anderson v. Mt. Clemens Pottery Co.*, 328

U.S. 680, 686-88 (1946), where the Supreme Court had held that, if the

employer's records are inaccurate or inadequate, the plaintiff employee

> has carried out his burden if he proves that he has in fact performed
> work for which he was improperly compensated and if he produces
> sufficient evidence to show the amount and extent of that work as a
> matter of just and reasonable inference. The burden then shifts to the
> employer to come forward with evidence of the precise amount of
> work performed or with evidence to negative the reasonableness of
> the inference to be drawn from the employee's evidence. If the
> employer fails to produce such evidence, the court may then award
> damages to the employee, even though the result be only
> approximate.

*Hearnsberger*, 435 F.2d at 931-32 (quoting *Anderson*, 328 U.S. at 687-88)).

Plaintiffs contend that they were "entitled to a reasonable inference of

accuracy of their damages evidence, and Defendants bore the burden of

establishing the exactness of the comparatively minuscule amounts of

overpayments to be deducted from the totals" on plaintiffs' damages exhibits.

Appellants' Brief at 15. Once again, our review is severely hampered by the fact

that plaintiffs have not provided citations to enable us to find their damages

exhibits, if those exhibits are included in the appendix. But we see no defect in

the trial judge's rulings and instructions. Instruction 24 clearly told the jurors

that the defendants bore the burden of proving the amounts of any "premium pay"

that could be subtracted in performing the calculations.[9]

Even if we assume that the plaintiffs had proffered a set of instructions and a verdict form that would have been far easier for the jurors to use, that would still not convince us that the trial judge abused his discretion in not using the simplest procedure available.

Plaintiffs raise another issue which we have not addressed – whether the trial judge erred in deciding as a matter of law that plaintiffs had failed to adduce evidence to support their contention that the defendants had willfully violated the Act. Because we uphold the jury verdict that there was no violation, plaintiffs could not show prejudice even if we were to conclude that there was evidence from which the jurors could have found willful violations.

Accordingly the cross-appeals, Nos. 02-3005 and 02-3014, are DISMISSED, and the judgment of the district court in No. 01-3398 is AFFIRMED.

---

[9]Defendants suggest that plaintiffs cannot show that they suffered any prejudice from the verdict form because the jury awarded no damages. That contention quite obviously misses the mark because plaintiffs argue, unpersuasively we conclude, that the very complexity of the task of calculating damages influenced the jury to decide all issues in favor of the defendants.