Tanya ZACHARY, et al. Plaintiffs,

v.

**RESCARE OKLAHOMA, INC., and ResCare, Inc., Defendants.**

Nos. 02–CV–496–TCK–FHM, 03–CV–836–TCK–FHM.

United States District Court, N.D. Oklahoma.

Nov. 30, 2006.

See, also, 2006 WL 3762095.

Terry Arthur Hall, Armstrong & Lowe PA, Tulsa, OK, for Tanya Zachary individually, Sharon Anderson individually, Plaintiffs.

Adam Wade Childers, Gayle L Barrett, Amanda Leigh Maxfield, Peggy Lee Clay, Crowe & Dunlevy (OKC), Oklahoma City, OK, Lynn F Saunders, Madalene A B Witterholt, Crowe & Dunlevy (Tulsa), Tulsa, OK, Michael Wayne Bowling, Integris Legal Services, for Res–Care Oklahoma, Inc. Kentucky Corporation, Res–Care, Inc. Kentucky Corporation, Res–Care Oklahoma, Inc., Defendants.

### ORDER

KERN, District Judge.

Before the Court is Defendant ResCare, Inc.'s Motion for Summary Judgment (Docket No. 259).[1]

---

1. Defendants' Motion for Partial Summary Judgment Regarding the Good Faith/Reasonableness Defense to Alleged Willful Violations of the Fair Labor Standards Act (Docket No. 260) and Plaintiffs' Motion for Partial Summary Judgment (Docket No. 240) are also pending before the Court and will be ruled on by separate order.

## I. Procedural History

Plaintiffs are or have been employed by Defendants as habilitation training specialists or habilitation training specialist supervisors. Plaintiffs worked with developmentally disabled clients of Defendants. Plaintiffs allege that Defendants failed to pay them overtime as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and that such failure was willful. Defendants contend Plaintiffs were exempt from the overtime provisions of the FLSA pursuant to the companionship services exemption contained in 29 U.S.C. § 213(a)(15).

Plaintiffs in Case No. 02–CV–496 filed their Amended Complaint on August 1, 2002, and the case was assigned to Judge James O. Ellison. Plaintiffs in Case No. 03–CV–836 filed their Complaint on December 5, 2003, and the case was assigned to the undersigned. The undersigned transferred Case No. 03–CV–836 to Judge Ellison as related to Case No. 02–CV–496. On December 30, 2004, Judge Ellison granted the parties' Joint Motion to Consolidate, and the cases were consolidated for all purposes pursuant to Federal Rule of Civil Procedure 42(a).

On October 17 and 18, 2005, Judge Ellison heard arguments on the parties' cross motions for summary judgment on the issue of liability. By order dated November 18, 2005, Judge Ellison addressed eighteen specific households and granted in part and denied in part the motions for summary judgment. By order dated January 13, 2006, Judge Ellison addressed eleven additional households and granted in part and denied in part the motions for summary judgment. On February 8, 2006, upon the retirement of Judge Ellison, the cases were transferred to the undersigned. On March 2, 2006, Magistrate Judge Frank H. McCarthy conducted a scheduling conference and entered a scheduling order to govern the remaining events in the case. Pursuant to this scheduling order, the parties filed additional motions for summary judgment.

## II. Summary Judgment Standard

Summary judgment is proper only if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the burden of showing that no genuine issue of material fact exists. *See Zamora v. Elite Logistics, Inc.,* 449 F.3d 1106, 1112 (10th Cir.2006) (citation omitted). The Court resolves all factual disputes and draw all reasonable inferences in favor of the non-moving party. *Id.* (citation omitted). However, the party seeking to overcome a motion for summary judgment may not "rest on mere allegations" in its complaint but must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e).

## III. Discussion

### A. *Factual Background*

Defendant ResCare, Inc. ("ResCare"), headquartered in Louisville, Kentucky, is a provider of residential, training, educational, and support services to populations with special needs. As of December 31, 2001, ResCare provided services to approximately 27,300 persons with special needs in over thirty states. ResCare's primary business unit is its Division for Persons with Disabilities ("DPD"), which is divided into five geographic regions. ResCare entered the Oklahoma market in 1995, when the State of Oklahoma awarded contracts to ResCare to provide services to persons in the Tulsa and Oklahoma City areas. (*See* Plfs.' Resp. to ResCare Inc.'s Mot. for Summ. J., Ex. 5.) In July of 1995, David S. Waskey, general counsel for ResCare, signed a Certificate of Incorporation

for ResCare Oklahoma, Inc. ("ResCare Oklahoma") (*See id.,* Ex. 10.) ResCare refers to ResCare Oklahoma as one of its subsidiary companies. (*See id.,* Exs. 9 and 10.)

It is undisputed that Defendant ResCare Oklahoma, ResCare's subsidiary, is Plaintiffs' employer. However, Defendant Res-Care argues that it is entitled to judgment as a matter of law because it is not a "joint employer" with ResCare Oklahoma and therefore cannot be liable for any FLSA damages owed to Plaintiffs. The issue of whether ResCare is a joint employer of Plaintiffs with ResCare Oklahoma presents a question of law to be decided by the Court. *See Torres–Lopez v. May,* 111 F.3d 633, 638 (9th Cir.1997); *Karr v. Strong Detective Agency,* 787 F.2d 1205, 1206 (7th Cir.1986).

### B. *Joint Employment Standard*

■ An "employer" under the FLSA is broadly defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). Separate entities that share control over an individual worker may be deemed "joint employers" under the FLSA. *See* 29 C.F.R. § 791.2(a); *Schultz v. Capital Int'l Sec., Inc.,* 466 F.3d 298, 305 (4th Cir.2006). All joint employers are responsible, both individually and jointly, for compliance with the FLSA. *Schultz,* 466 F.3d at 305. According to the relevant Department of Labor regulations,

examples of situations in which joint employment exists include:

(1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees;

(2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

(3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted).

■ The Court is not aware of Tenth Circuit authority addressing the issue of joint employment under the FLSA. In determining whether a person meets the definition of "employee" under the FLSA, which is a distinct but similar inquiry, the Tenth Circuit has applied various versions of an "economic realities" test. *See Johnson v. The Unified Gov't of Wyandotte Cty.,* 371 F.3d 723, 729 (10th Cir.2004) (considering five factors as part of economic realities test);[2] *Henderson v. Inter–Chem Coal Co.,* 41 F.3d 567, 570 (10th Cir.1994) (considering six factors as part of economic realities test). In considering the "economic realities" in the context of

---

**2.** ResCare stated in its brief that the Tenth Circuit's decision in *Johnson* upheld "a determination that *joint employment* did not exist in the case because, among other things, defendant had very little control or supervision over the plaintiffs." (Defs.' Mot. for Summ. J. at 8 (emphasis added).) This statement is misleading and in error. *Johnson* addressed the issue of whether police officers fit the definition of "employees" under the FLSA or instead were functioning as independent con-

tractors. *See Johnson,* 371 F.3d at 728. The court expressly did not reach the issue of joint employment. *Id.* ("Because we conclude that sufficient evidence supported the jury findings that the plaintiffs were not employees of the Housing Authority, but were instead functioning as independent contractors when they patrolled as security guards, we will not decide the other issues mentioned above [including joint employment].").

whether an individual is an "employee," the Tenth Circuit has focused on whether the individual was "economically dependent on the business to which he renders service or, as a matter of economic fact, was in business for himself." *See Henderson*, 41 F.3d at 570. Because the inquiry in this case is one of joint employer status rather than employee status, the factors applied in those cases are not directly applicable. *See Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 67–68 (2d Cir.2003) (noting that factors such as those considered in *Henderson* and *Johnson*, including the workers' investment in the business and the degree of skill and independent initiative required of workers, are used primarily to distinguish independent contractors from employees and therefore "do not bear directly on whether workers who are already employed by a primary employer are also employed by a second employer").

One district court in the Tenth Circuit applied a different type of "economic realities" test to the question of joint employment under the FMLA, which poses an identical issue as that presented under the FLSA. *See Harbert v. Healthcare Svcs. Group, Inc.*, 173 F.Supp.2d 1101, 1105 (D.Colo.2001). In that case, the court focused its inquiry on whether the putative employer "possessed a sufficient indicia of control" to be considered a joint employer of the plaintiff. *See id.* at 1106. The court further considered the "nature and structure of the employment relationship" in order "to determine whether the economic realities justify a finding of joint employment." *Id.*

 Outside the Tenth Circuit, courts have employed a variety of tests in analyzing joint employment under the FLSA. *See Zheng*, 355 F.3d at 67 (explaining various multi-factored tests); *Lopez v. Silverman*, 14 F.Supp.2d 405, 415 (S.D.N.Y.1998) (explaining limitations of various tests and fashioning new seven-part test to fit the facts presented). The most commonly applied factors appear to be the *"Bonnette"* factors, taken from a Ninth Circuit case, which include whether an alleged employer: (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, or (4) maintained employment records. *See Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983). These four factors are most useful in situations involving corporate subsidiaries or managing administrators, such as that presented here. *Cf. Zheng*, 355 F.3d at 68 (noting that *Bonnette* factors may be less useful in other situations). Although useful, these four factors are not exhaustive and are not the "exclusive touchstone of the joint employment inquiry under the FLSA." *Id.* at 71 (reversing district court's exclusive reliance on four factors and remanding with instructions to consider the circumstances of the whole activity viewed in light of the economic reality and "any other factors it deems relevant to its assessment of the economic realities"). In fact, joint employment may be found even when an entity "does not hire and fire its joint employees, directly dictate their hours, or pay them." *Id.* at 70. Regardless of the specific factors used, the concept of joint employment should be "defined expansively," *Chao v. A–One Med. Svcs., Inc.*, 346 F.3d 908, 917 (9th Cir.2003), and the Court must always consider the "economic realities" of the employment relationship in light of all circumstances presented.

### C. *ResCare is a Joint Employer of Plaintiffs*

 Considering the totality of the circumstances, the Court concludes that Res-

Care is a joint employer of Plaintiffs along with ResCare Oklahoma. In some cases, courts must rely solely on general facts surrounding the relationship to determine if sufficient control was exercised to consider an entity a "joint employer" of the plaintiff for purposes of FLSA liability. In this case, the Court has the benefit of specific evidence that ResCare employees made or assisted in making all FLSA decisions that are at issue. First, it is undisputed that David Waskey ("Waskey"), general counsel for ResCare, performed some type of legal analysis to determine whether Plaintiffs were entitled to overtime on or around July of 2000. (*See* Waskey Dep. 37:19–38:5, and Comparison Chart, Exs. 5 and 6 to Defs.' Mot. for Partial Summ. J. Regarding the Good Faith/Reasonableness Defense.)[3] Defendants, in fact, rely on this legal analysis to support their assertion that the decision to deny overtime was made in good faith. (*See* Defs.' Mot. for Partial Summ. J. Regarding the Good Faith/Reasonableness Defense at 9, Docket No. 260.) Second, it is undisputed that ResCare executives Tamara Schaeffer ("Schaeffer") and Stephen Brunett ("Brunett") eventually determined that the exemption did not apply and that Plaintiffs would be paid overtime, effective January 1, 2003. Schaeffer is a Regional Director for ResCare who oversees the states of Oklahoma and Kansas, while Brunett is Vice President of the Central Region for ResCare. Schaeffer and Brunett also made decisions regarding implementation of the overtime decision. (*See* Schaeffer Dep. 94:13–95:16, Ex. 3 to Plfs.' Resp. to ResCare's Mot. for Summ. J.) These facts demonstrate that ResCare not only had the authority to exercise control over em-

ployment decisions but *did* exercise this control by and through (1) its general counsel, who concluded in 2000 that the companionship exemption applied, and (2) other ResCare executives who concluded in 2003 that the exemption did not apply. ResCare therefore exercised specific control of the determination of whether and to what extent overtime would be paid to Plaintiffs—the specific issue presented in this lawsuit.

The factual record also demonstrates that ResCare exercised general control over ResCare Oklahoma employees. When asked how he could supervise employees that worked at another company, Brunett testified: "That was the arrangement that we had that, as a Res–Care Inc. employee, I supervised and looked over the operations of those wholly owned subsidiaries." (Brunett Dep. 9:16–10:8., Ex. 4 to Plfs.' Resp. to ResCare's Mot. for Summ. J.) Brunett further testified that: (1) ResCare prepared the employee handbook used by ResCare Oklahoma (*id.* 23:19–24:4); (2) ResCare Oklahoma employees are directed to the "Resource Center Human Resources Department" of ResCare in Louisville when they have questions about affirmative action or equal opportunity employment (*id.* 36:7–37:11); (3) ResCare Oklahoma employees report sexual harassment directly to ResCare (*id.* 42:1–43:20.); and (4) ResCare Oklahoma employees who wish to follow the appeals procedure set forth in the employee handbook file and pursue their appeal directly with employees of ResCare (*id.* 55:6–56:21).

■ In light of ResCare's specific control over the relevant decision in this case

---

**3.** Although not included in briefing for this motion, this fact is presented within other motions for summary judgment and is thus part of the record. Plaintiffs focused on Res-Care's control of the January 2003 decision to

start paying overtime. The Court believes it is also important that the decision maker in 2000, who determined not to pay overtime, was also a ResCare executive.

and general control over personnel matters, the Court concludes that ResCare and ResCare Oklahoma are joint employers under the relevant regulations, under the *"Bonnette"* factors described above, and considering all "economic realities." First, under the relevant statutory and regulatory language, ResCare and ResCare Oklahoma cannot be said to be "completely disassociated with respect to the employment of" Plaintiffs. *See* 29 U.S.C. § 791.2(b)(3). It is clear that ResCare and ResCare Oklahoma share decision-making authority over at least some employment conditions and that they function as one unit in making at least some employment decisions. Although ResCare attempts to minimize its role, the testimony before the Court indicates that ResCare executives were actively involved in setting and implementing policies that governed Plaintiffs' employment. Thus, the case fits within the third example provided in the regulations of entities that are not "completely disassociated with respect to the employment of" the employees and that "may be deemed to share control of the employee[s]." *Id.*[4]

Second, considering the *Bonnette* factors, the Court finds that ResCare "determined the rate and method of payment" that is at issue in this case and, at least to some extent, "supervised and controlled the conditions of employment," such that two of the four factors weigh in favor of joint employment. *See Bonnette*, 704 F.2d at 1470. In addition, considering the "indicia of control" inquiry used in the *Harbert* decision, ResCare clearly possessed at least an "indicia" of control over Plaintiffs since ResCare employees made the relevant decision in this case. *See Harbert*,

173 F.Supp.2d at 1106. Finally, considering the "economic realities" of the employment relationship, the reality is that ResCare has a sufficient economic interest in Plaintiffs' employment to determine their method and rate of pay, which is an integral economic aspect of an employer/employee employment relationship. Although the Court found no case presenting similar or identical facts, case law supports the conclusion Plaintiffs were jointly employed by ResCare and ResCare Oklahoma for purposes of FLSA liability. *Compare Falk v. Brennan,* 414 U.S. 190, 195, 94 S.Ct. 427, 38 L.Ed.2d 406 (1973) ("In view of the expansiveness of the [FLSA's] definition of 'employer' and the extent of D & F's managerial responsibilities at each of the buildings, which gave it substantial control of the terms and conditions of the work of these employees, we hold that D & F is, under the statutory definition, an 'employer' of the maintenance workers."); *Schultz,* 466 F.3d at 304 (finding joint employment existed as a matter of law where employees performed work that simultaneously benefitted both defendants and where both defendants were involved in employment decisions); *Barrientos v. Taylor,* 917 F.Supp. 375, 384 (E.D.N.C.1996) (applying nine factors to issue of joint employment under the Migrant Seasonal Agricultural Workers Protection Act and finding that defendant was joint employer as a matter of law because, *inter alia,* it controlled "how much plaintiffs made" and because primary employer "depended on [the defendant] for significant guidance as well as monetary support") *with Zhao v. Bebe Stores, Inc.,* 247 F.Supp.2d 1154, 1155 (C.D.Cal.2003) (find-

---

4. Because the undisputed facts here "fit readily within the third example of joint employment listed in the regulation," it is likely unnecessary to consider additional factors. *See Schultz,* 466 F.3d at 306 n. 2. However, because the Tenth Circuit has not issued an opinion in this area, the Court will conduct further inquiry out of an abundance of caution.

ing no joint employment relationship where putative employer merely reviewed work product of primary employer for quality control purposes and primary employer "controlled the working conditions" of its employees).

### D. *Effect of the ASA*

■ ResCare urges the Court to focus exclusively on the terms of an Administrative Services Agreement ("ASA") it entered with ResCare Oklahoma upon formation of ResCare Oklahoma in 1995. To demonstrate that ResCare Oklahoma had the exclusive right to control decisions regarding Plaintiffs' employment, Defendants cite Article I of the ASA. This provision places limitations on ResCare's responsibilities and states that ResCare Oklahoma "retains the responsibility to (a) supervise and direct the management of the operation of the Facilities, (b) make all policy decisions relating to the Facilities, and (c) determine all operating policies ...." Pursuant to Article IV of the ASA, ResCare Oklahoma's duties include, *inter alia*, responsibility for management, supervision, and operation of the facility. Specifically, ResCare Oklahoma "shall select and employ all personnel at its Facilities, including the Administrator and all other management personnel" and "shall be responsible for the formulation and implementation of all rules, regulations, policies and procedures of the Facilities."

Based on these provisions, ResCare asserts that ResCare Oklahoma occupied "every facet of the traditional role of the employer of plaintiffs, while ResCare played the role of consultant and banker." (*See* ResCare's Reply at 6.) This description is inaccurate. First, even assuming the ASA is controlling as to the joint employment question, the ASA's terms do not eliminate the possibility of a joint employ-

ment relationship. Although ResCare Oklahoma does retain the right to hire employees and set and implement employment policies, ResCare's duties under Article III of the ASA include, *inter alia*, (1) processing employee payrolls, (2) advising ResCare Oklahoma concerning compliance with governmental regulation, (3) providing legal counsel, (4) providing corporate and regional resource personnel to assist ResCare Oklahoma with "[p]ersonnel management including personnel policies, wage and benefit scales, and employee benefit plans," and (5) advancing working capital to ResCare Oklahoma where requested or deemed necessary. Further, "[u]pon request," ResCare "shall develop or update policies and procedures for Company and recommend changes, where necessary." These and other duties of ResCare could, depending on the facts presented, support a finding of joint employment. Second, notwithstanding anything in the ASA to the contrary, it is clear that ResCare *did* exercise control and supervision of at least some of Plaintiffs' terms of employment, specifically, whether they would be paid overtime. The Court would be ignoring its duty to examine the realities of the relationship if it focused exclusively on the relationship created by the ASA. *Cf. Rios v. Airborne Express Inc.*, No. C–05–2092, 2006 WL 2067847, at * 3 (N.D.Cal. July 24, 2006) (finding that defendant was not a joint employer as a matter of law where putative employer's contract with other employer stated that other employer exercised independent control over its employees *and there was no evidence in the record that the putative employer controlled or supervised plaintiffs* ) (emphasis added); *Zavala v. Wal–Mart Stores, Inc.*, 393 F.Supp.2d 295, 330 (D.N.J.2005) ("In any event, the Contract would not resolve necessarily the question of whether Wal–Mart is an employer or joint employer of Plaintiffs. Contract disclaimers, which

provide that a particular entity is/is not an employer or is/is not an independent contractor or employee, generally do not decide the issue."). Accordingly, the ASA, which formed the primary basis of ResCare's motion for summary judgment, is not controlling or persuasive in light of other evidence in the record that supports a finding of joint employment.

Defendant ResCare, Inc.'s Motion for Summary Judgment (Docket No. 259) is DENIED, and ResCare is determined to be a joint employer of Plaintiffs as a matter of law.

## IV. Scheduling Issues

The Court has a criminal trial that is first on the December 18 trial docket, and the Court will not begin a three-week trial close to the Christmas holiday. Therefore, the pretrial conference set for December 11 is STRICKEN and the trial date of December 18 is STRICKEN. The Court is currently unable to determine when a three-week time period will be available for trial of this case.

The parties are encouraged to discuss the possibility of trial before Magistrate Judge McCarthy. In addition, the parties are ordered to attend a mandatory settlement conference, and this matter is referred to Magistrate Judge Paul Cleary to facilitate the scheduling of such conference.